**Terry J. BRENNAN, Petitioner,**

v.

**WORKMEN'S COMPENSATION AP-
PEAL BOARD (LANE CONSTRUC-
TION CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 1996.

Decided Sept. 24, 1996.

Eric P. Betzner, for Petitioner.

Terry L.M. Bashline, for Respondent.

Before DOYLE and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

This is an appeal by Terry Brennan (Claimant) from an order of the Workmen's Compensation Appeal Board (Board) granting the suspension petition of Lane Construction Corporation (Employer) as of August 6, 1991.[1]

The facts are as follows. On May 2, 1991, while Claimant was employed as a truck driver by Employer, he sustained a neck injury (whip-lash) when his vehicle was struck by another vehicle. The Claimant received total disability benefits pursuant to a Notice of Compensation Payable. At the time of Claimant's injury his average weekly wage was $811.26.

On May 13, 1991, Dr. Orrin Mann, Employer's physician, examined Claimant and concluded that he was able to return to work in a light-duty capacity and could drive a truck, but could not lift in excess of 25 pounds. On May 14, 1991, Claimant returned to work and was offered a full time position driving a water truck[2] at wages

---

1. The Board affirmed the July 19, 1993 decision of Referee Frederick Coffroth, which predated the recent amendment which changed the title of referee to Worker's Compensation Judge.

2. A water truck is used to spread water on the road or ground in order to keep down the dust while construction work is being performed.

equal to his pre-injury wage, but, prior to actually starting work, Claimant complained of increased pain in his neck, upper back, and lower back. Claimant did not attempt to drive the water truck, but instead, left the work site and went to The Workplace, an occupational medical outpatient clinic. At The Workplace, Claimant saw Dr. Mann again about his pain, and, thereafter, began receiving some physical therapy. Claimant then began treating with his own physician, Dr. Louis C. Glasso, on May 22, 1991, foregoing treatment with Dr. Mann. Claimant did not return to work after May 14, 1991.

During the hearing before the referee, Dr. Mann testified that he believed that Claimant was not being completely honest about the worsening of his injury, yet had not fully recovered as of May 20, 1991. Dr. Glasso, Claimant's treating physician, examined Claimant on two occasions. On May 22, 1991, Dr. Glasso examined Claimant, finding that he suffered from a cervical and lumbar sprain, and an MRI was performed. During Claimant's second visit to Dr. Glasso, on July 17, 1991, Dr. Glasso modified his diagnosis to a possible herniated disc in his lumbar spine, which was work-related. However, Dr. Glasso also opined that Claimant could perform light-duty work with restrictions, that is, he could not lift above 20 to 25 pounds and could only drive from one to three hours per day. Dr. Glasso also stated that Claimant could sit for only five hours in an eight-hour work shift.

Evidence was presented before the Referee that on August 5, 1991, Employer made available to Claimant the position of a "job parts runner," which entailed driving a pickup truck or an automobile to pick up and deliver parts for equipment; Claimant would work full time and be paid at full-time wages equal to his pre-injury wage. On October 23, 1992, Employer also made available to Claimant the job of a gate guard also at wages equal to Claimant's pre-injury pay. Claimant did not attempt to perform either of the proffered positions.

In support of Employer's suspension petition, Employer presented the testimony of Robert Everett Alger, the project manager for Employer, who testified as follows:

Q. Now, either, both of these jobs [water truck driver and job parts runner] were teamster jobs.

A. That is correct.

Q. Would it be the same rate of pay as what he had before?

A. Yes.

**Q. The same time, I mean the number of hours?**

**A. That is correct.**

(Notes of Testimony at 8; Reproduced Record at 48a.) (Emphasis added.)

Based upon the above facts as found by the Referee, Employer's petition to suspend benefits was granted as of August 6, 1991, the day after Employer offered Claimant the "job parts runner" position, which position was within his physical capabilities. Although the Referee found that Claimant continued to suffer from some residual work-related injury, he accepted the testimony of Employer's witnesses that light-duty positions were available which paid wages equal to the rate of compensation of Claimant's pre-injury wages. (Referee's decision, Finding of Fact (F.F.) No. 10.) The Referee further found that Claimant did not exercise good faith by refusing to accept the light-duty position as a "job parts runner." Accordingly, the referee concluded that "[h]ad Claimant accepted the position offered to him he would have no loss in earnings." (Referee's decision, F.F. No. 10.)

Claimant appealed to the Board, alleging, *inter alia*, that substantial evidence did not support the finding that Claimant suffered no loss of income due to his injury. The Board affirmed, finding that Employer had presented substantial evidence that "Claimant was capable of performing light duty or sedentary work for the [Employer] **at no loss of earnings**." (Board's opinion at 6.) (Emphasis added.) Claimant now appeals to this Court.

■ The only issue in this case is whether the Board erred in concluding that Claimant suffered no loss of income due to his work-related injury. Specifically, Claimant argues that, although the light-duty positions which were offered would pay him at the same

hourly rate of pay as his pre-injury job, *i.e.* $15.96 an hour for a forty-hour work week ($638.40), he nonetheless suffers a loss of income because the amount of money he would earn from any of the light-duty positions would be less than his pre-injury average weekly wage of $811.26. Claimant asserts that, although Claimant's hourly wage was the same as before, his pre-injury average weekly wage was higher because in his pre-injury job Claimant could work overtime. Therefore, a modification, not a suspension, should have been granted.

▪ An employer seeking to suspend a claimant's disability benefits must prove that, although claimant continues to suffer from a work-related injury, such injury does not result in a loss of earnings. Section 423 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772; *Diffenderfer v. Workmen's Compensation Appeal Board (Rabestos Manhatten),* 651 A.2d 1178 (Pa.Cmwlth.1994), *petition for allowance of appeal denied,* 540 Pa. 642, 659 A.2d 561 (1995). However, where a claimant continues to suffer from a work-related injury and is employed in a capacity which is not financially equal to his or her pre-injury position, partial disability benefits should be awarded pursuant to Section 306(a) of the Act, 77 P.S. § 512. *Id.*

In *Harper & Collins v. Workmen's Compensation Appeal Board (Brown),* 543 Pa. 484, 672 A.2d 1319 (1996), a claimant was injured in the course of her employment and received total disability benefits calculated on the basis of an average weekly wage of $640.68. The claimant remained physically incapable of returning to her pre-injury position. The employer then offered her a light duty position, paying the same hourly wage as the pre-injury job; the claimant accepted and performed the light-duty position. She and her employer signed a supplemental agreement suspending her benefits until her light-duty average weekly wage could be determined. The claimant's average weekly wage of her light duty position was lower than her average weekly pre-injury wage because her pre-injury average weekly wage included overtime, which the employer discontinued offering to all employees for eco-nomic reasons. The claimant then filed a petition for review to obtain partial disability benefits.

The Supreme Court held that the claimant was eligible for partial disability benefits because her average weekly wage after she returned to work, which did not include overtime, was less than her pre-injury average weekly wage, which did include overtime. The Supreme Court held:

> an employee who continues to suffer from her work-related injury is entitled to receive a percentage of the difference between her wages at the time she was injured and her earning power upon her return to work. The employee's pre-injury average weekly wage is determined pursuant to section 582 of the Act which provides that an employee who is paid by the hour shall have an average weekly wage based upon her *total wages at the time of the injury.* The plain language of this section clearly requires the inclusion of over-time earnings in calculating the employee's average weekly wage.

*Id.* at 490, 672 A.2d at 1321–22 (emphasis in original) (footnote omitted) (citation omitted); *see also McGraw–Edison v. Workmen's Compensation Appeal Board (Ardeno),* 120 Pa.Cmwlth.19, 547 A.2d 1290 (1988), *petition for allowance of appeal denied,* 525 Pa. 607, 575 A.2d 571 (1990). Thus, it would initially appear that in this case Claimant might have been eligible for partial disability benefits if he had accepted the proffered employment and had earned wages which were less than his pre-injury wages. The fact is, however, that he did not accept the proffered employment.

It is undisputed that the hourly rate of pay of Claimant's pre-injury position and the "parts runner" position were the same, $15.96 per hour, and it is also uncontroverted that Claimant's average weekly wage prior to his injury was $811.26. If the light duty position of "parts runner" were based on a forty-hour work week, at a rate of $15.96 an hour, Claimant's average weekly wage would be $638.40, which would make Claimant eligible for partial disability benefits. However, the referee found as a fact that Claimant

would suffer no loss of earnings in accepting this position.

It is axiomatic that the referee is the ultimate fact finder and that his findings will not be disturbed on appeal where substantial evidence exists to support the findings. *Griswold v. Workmen's Compensation Appeal Board (Thompson Maple Products)*, 658 A.2d 449 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 651, 666 A.2d 1059 (1995). We find that substantial evidence does exit which supports the finding that Claimant's light-duty wages would have equaled his pre-injury wages. As stated above, Mr. Alger, testified that the "parts runner" position would pay the same rate of pay as Claimant had earned before his injury **and with the same number of hours as the pre-injury job.**

Accordingly, substantial evidence exists which supports the finding that Claimant's average weekly wage in the light-duty job would have equaled his pre-injury average weekly wage. We note that had Claimant returned to work in good faith in a light-duty capacity, his actual average weekly wage would have been known, and, if it were less than his pre-injury wage, Claimant would have been eligible for partial disability. However, because Claimant neglected to return to work, the Referee could only rely upon the testimony of the witnesses in discerning whether Claimant, working as a "parts runner," would have suffered a loss of income due to his work-related injury.

Affirmed.

### ORDER

NOW, September 24, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.