**CITY OF McKEESPORT, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MILETTI), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1998.

Decided July 17, 1998.

Richard L. Rosenzweig, Pittsburgh, for petitioner.

Sara Klein, Pittsburgh, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

DOYLE, Judge.

The City of McKeesport (Employer or City), petitions for review of a determination of the Workers' Compensation Appeal Board (Board), affirming a decision of a Workers' Compensation Judge (WCJ), granting the fatal claim petition of Beatrice Miletti (Claimant). We reverse.

On September 27, 1993, Claimant filed a fatal claim petition as the dependent widow of Cresente Miletti (Decedent). The petition alleged that the Decedent had sustained interstitial lung disease (ILD)[1] while in the

---

1. The WCJ described ILD as:

[A] progressive and terminal disorder where-

course of his employment as a fire fighter. Decedent retired from the City's fire department on August 31, 1983, and died on February 25, 1993.

Employer denied the allegations of Claimant's petition, and three hearings were held before the WCJ. In support of her petition, Claimant presented, *inter alia*, the deposition testimony of Rahat M. Chaudhry, M.D., a physician board-certified in internal medicine. Dr. Chaudhry began treating Decedent on July 24, 1986, and opined that Decedent's ILD was caused by his occupational inhalation of heat, soot, chemicals and asbestos.

With regard to Dr. Chaudhry's testimony, the WCJ made the following, pertinent findings of fact:

> (c) Although Dr. Chaudhry acknowledged that he had initially believed decedent's ILD to be idiopathic in nature, he changed his opinion after his subsequent review of the pertinent medical literature and his taking of further history from decedent. On December 7, 1992, Dr. Chaudhry presented for the first time to decedent his opinion that decedent's ILD was work-related;
>
> . . . .
>
> (f) Decedent had become disabled due to work-related ILD prior to the date of his July 24, 1986 examination. According to Dr. Chaudhry, any symptoms of tiredness and coughing that decedent may have experienced at the time of his August, 1983 retirement would be consistent with the symptoms of ILD.

(WCJ's Findings of Fact Nos. 6(c) and 6(f); R.R. at 17a.) The WCJ noted that on January 13, 1993, Claimant's counsel notified Employer that Decedent had recently been informed by his physician that his occupational exposures to fumes and smoke had rendered him disabled.

in the normal lung tissues are displaced by fibrous tissue and as a consequence lose the ability to expand properly. There are many known causes of ILD, including exposure to noxious materials such as soot, asbestos, metals, chemicals, coal, pesticides, and molds, as well as a pre-existing history of systemic diseases such as lupus and arthritis.

Before the WCJ, Employer argued, *inter alia*, that Claimant had failed to show that Decedent's compensable disability arose within 300 weeks of Decedent's last date of occupational exposure as is required by Section 301(c)(2) of the Workers' Compensation Act.[2] This Section states in part:

> The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act.... Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable.

77 P.S. § 411(2) (footnote omitted).

The WCJ rejected this statute of limitation argument, concluding that Claimant had produced unequivocal and credible medical testimony that Decedent was disabled as a result of work-related ILD prior to July 24, 1986 (the date he first received treatment from Dr. Chaudhry). Because this date fell within the 300–week period following Decedent's retirement in August of 1983, the WCJ held that Claimant had established a compensable disability as required by Section 301(c)(2) of the Workers' Compensation Act. In support of this determination, the WCJ cited this Court's decision in *Penn Steel Foundry and Machine Co. v. Workmen's Compensation Appeal Board (Wagner)*, 122 Pa.Cmwlth. 171, 551 A.2d 653 (1988).

Both Claimant and Employer appealed the WCJ's decision[3] and the Board affirmed.

(WCJ's Finding of Fact No. 6(a); R.R. at 16a.)

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(c)(2).

3. The issue raised in Claimant's appeal to the Board is not pertinent to the present case and, as a result, will not be discussed further.

On appeal to this Court,[4] Employer asserts that Section 301(c)(2) of the Workers' Compensation Act bars Claimant's fatal claim petition because Decedent did not file a claim petition during his lifetime and died more than 300 weeks after the date of his last occupational exposure. Employer contends that our decision in *Fortely v. Workmen's Compensation Appeal Board (J & L Steel Corporation (Buckeye))*, 117 Pa.Cmwlth. 356, 543 A.2d 1248 (1988), is controlling.

In *Fortely*, the decedent, a coal miner, ceased working for the employer in August of 1976 and subsequently died in February of 1984. The claimant, his widow, filed a fatal claim petition in November of 1985, alleging that the decedent's death was caused by work-related pneumonconiosis and anthracosilicosis. The employer contested the claim, asserting that it was time barred because the decedent's death did not occur within 300 weeks[5] after the last date of exposure to coal dust. The WCJ agreed, denying the claimant's petition and the Board affirmed.

On appeal to this Court, the claimant in *Fortely* argued that she was prepared to offer medical evidence that the decedent became disabled in February of 1982 or October of 1982 as a result of his exposure to coal dust and that the decedent died within 300 weeks of that disability. The claimant argued that if she were permitted to establish these facts, Section 301(c)(2) of the Workers' Compensation Act entitled her to death benefits regardless of whether the decedent filed a claim for benefits during his lifetime.

The *Fortely* court began its analysis by noting that Section 301(c)(2) of the Workers' Compensation Act contains a limitation similar to the one found in Section 301(c) of the Pennsylvania Occupational Disease Act (Occupational Disease Act).[6] Specifically, Sec-

tion 301(c)(2) of the Occupational Disease Act provides:

> Wherever compensable disability or death is mentioned as a cause for compensation under this act, it shall mean only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry.

77 P.S. § 1401(c). The *Fortely* court then went on to state:

> The Pennsylvania Superior Court has held that the language of Section 301(c) of the Occupational Disease Act stating that '[w]herever death is mentioned as a cause for compensation....' [it] refers to cases where no claim is made during the employee's lifetime for compensation for disability. *Toffalori v. Donatelli Granite Company*, 157 Pa. Superior Ct. 311, 43 A.2d 584 (1945). The court in *Toffalori* determined that where the first claim is filed after the employee's death, *death* is the cause for compensation. Thus, if the employee dies more than three years [7] ... after the last date of employment, the claim is time barred. *Toffalori* creates an exception to this general rule where a claim *has* been filed by the employee during his lifetime. In this type of case, the cause for compensation is *disability* such that a widow's claim will be construed to be a continuation of benefits already awarded to the employee. *See also Duffy v. City of Scranton/Fire Department*, 112 Pa.Commonwealth Ct. 537, 535 A.2d 756 (1988)(benefits awarded under *Toffalori* exception).
>
> We declined to extend the *Toffalori* exception to a case where a widow was seeking death benefits under the Occupational Disease Act more than fifteen years after

---

4. Our standard of review in a workmen's compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

5. Three hundred weeks is the equivalent of five years, nine months and one week.

6. Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. § 1401(c).

7. At the time of the *Toffalori* decision, the Occupational Disease Act provided that claims were time barred if an employee died three years or more after the last date of employment.

the date of her husband's last exposure. *Kilvady v. United States Steel Corporation*, 90 Pa.Commonwealth Ct. 586, 496 A.2d 116 (1985). Benefits were denied in *Kilvady* because no disability claim had been filed by her husband within the statutory period.

*Id.* at 1250 (emphasis in original) (footnote omitted).

Persuaded by the reasoning developed in occupational disease cases, the *Fortely* court held that the claimant's petition for death benefits was similarly barred by the 300 week limitation in the Workers' Compensation Act because the decedent's death occurred outside the statutory period.

In *Penn Steel*, decided approximately six months after the *Fortely* decision was decided, this Court reached a decidedly different conclusion. There, the claimant, widow of the decedent/employee, filed a fatal claim petition alleging that the decedent had died as a direct result of an occupational disease. The employer argued that the petition should not have been granted because the decedent's death did not occur within 300 weeks of last exposure as required by Section 301(c)(2) of the Workers' Compensation Act. After reviewing pertinent portions of the Workers' Compensation Act, the *Penn Steel* court stated:

[T]he Act specifically provides that when *disability* occurs within 300 weeks of exposure, the subsequent death as a result of the disease shall likewise be compensable. The legislature clearly recognized the sometimes insidious nature of occupational diseases and although *death* may occur *after* 300 weeks of the last exposure, it is nevertheless compensable if the *disability* occurred *within* the 300 week period.

It is the date of the compensable disability which triggers the limitation period even though death may occur after 300 weeks of the last exposure. The injury date begins to run after it is discoverable and it becomes apparent that a compensable injury or disease was sustained.

*Id.* 551 A.2d at 654 (emphasis in the original). Thus, although the decedent had never filed a claim during his lifetime, the *Penn Steel* court held that the claimant was entitled to benefits because evidence presented before the WCJ indicated that the decedent had a compensable disability within 300 weeks of his last occupational exposure.

The strongly-worded dissent in *Penn Steel* disagreed with the majority's analysis and emphasized the fact that the opinion was in direct conflict with *Fortely*. The dissent stated:

[T]he result reached by the majority in this case will have the effect of interpreting [the Workers' Compensation Act and the Occupational Disease Act] differently, and contrary to one another, an undesirable result in my opinion. The insidious nature of an occupational disease is just as insidious under the [Occupational Disease] Act as it is under the [Workers' Compensation] Act, and the two acts should be construed in a similar fashion.

*Id.* 551 A.2d at 657 (Doyle, J., dissenting).

Moreover, the dissent in *Fortely* noted that in *Kilvady* this Court had held that Section 301(c) of the Occupational Disease Act was a statute of repose, not a statute of limitations, quoting the following portion of *Kilvady*:

[T]he distinction was explained by Judge Wright in *Moore v. Dodge Steel Co.*, 206 Pa. Superior Ct. 242, 213 A.2d 130 (1965) as the difference between the *right* to compensation under Section 301(c) and the *time within which that right* to compensation *must be asserted* under Section 315. Consequently, inasmuch as the occupational disease compensation system is a creation of the legislature, we cannot create a new right thereunder not provided by the legislature and, except for situations such as that in Toffalori, we must defer to the legislative determination that there can be no right to compensation where death from an occupational disease does not occur within four years after the date of the employee's last exposure.... Section 301(c) must be interpreted, therefore as a statute of repose and any change to the contrary must be left to the legislature.

*Id.* 551 A.2d at 656 (citation omitted) (quoting *Kilvady*, 496 A.2d at 119–20) (emphasis in the original).

■ When interpreting statutes in *pari materia*, they should be interpreted as being in harmony with each other and construed as a component of the whole statutory structure. *Hutskow v. Washowich*, 156 Pa. Cmwlth. 655, 628 A.2d 1202, *petition for allowance of appeal denied*, 536 Pa. 633, 637 A.2d 293 (1993); *Royal Indemnity Co. v. Adams*, 309 Pa.Super. 233, 455 A.2d 135 (1983).

■ Having carefully reviewed pertinent case law, we now agree with the dissent in *Penn Steel* that Section 301(c)(2) of the Workers' Compensation Act is a statute of repose and that we cannot construe a claim for death benefits as a continuation of disability benefits where the claimant's decedent had not filed a claim during his or her lifetime. And, of course, where there is an occupational disease, a claim petition or a fatal claim petition may be filed under either Act. Clearly, if we were to follow the reasoning of the *Penn Steel* majority, Section 301(c)(2) of the Workers' Compensation Act and Section 301(c) of the Occupational Disease Act could not be viewed in harmony. Because prior decisions interpreting the Occupational Disease Act refused to allow the award of benefits where death from an occupational disease did not occur within four years after the date of the employee's last exposure, we are constrained to hold that such an award is likewise barred under the Workers' Compensation Act. Hence, to the extent that *Penn Steel* conflicts with *Fortely*, it is hereby overruled.

■ Addressing the facts of the instant action, we are faced with a situation in which Decedent did not seek benefits for his occupational disease during his lifetime. Thus, in order to collect under her fatal claim petition, Claimant had to prove that Decedent's death occurred within 300 weeks after his last date of employment. As Decedent died over ten years after his retirement as a fire fighter, Claimant is not entitled to collect benefits. Under the circumstances, we conclude that the Board erred in affirming the WCJ's award of benefits.

Accordingly, the order of the Board is reversed.[8]

### ORDER

**NOW**, July 17, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed.

8. In light of our holding in this case, we need not address the other issues raised in this appeal.