**Nancy WOLF, on behalf of the deceased, Hunter WOLF, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BIRDSBORO CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 20, 1999.

Decided July 8, 1999.

Reargument Denied Aug. 27, 1999.

---

Kirk L. Wolgemuth, Reading, for petitioner.

Francis P. Fitzsimmons, Philadelphia, for respondent.

Before DOYLE, J., SMITH, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The sole issue presented for our review is whether Nancy Wolf (Claimant) satisfied the requirements of the 300–week limitation period specified in § 301(c)(2) of the Workers' Compensation Act (Act).[1] Claimant appeals from an order of the Workers' Compensation Appeal Board (Board) reversing the Workers' Compensation Judge's (WCJ) decision granting her disability claim petition and fatal claim petition filed on behalf·of her deceased husband, Hunter Wolf (Decedent). Because Decedent never filed a lifetime claim petition and died beyond the 300–week limitation period, we affirm the Board's order.

The relevant facts of this case are as follows. In 1952, Decedent began working for Birdsboro Corporation (Employer), which manufactured metal castings for bridges and submarines. In 1956, Decedent began working in Employer's metallurgy department, a position he held for more than 30 years. Decedent's job required that he take pictures, known as radiographs, of metal castings to check for defects. From 1958 to 1961, the radiograph procedure required the technicians to obtain radiographs by suspending small pieces of live, radioactive cobalt attached to a string, commonly referred to as the "pill," above a metal casting to reveal any defects. This radiograph process exposed Decedent to substantial amounts of radia-

---

1. Section 301(c)(2) of the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(2).

tion.[2] At some point during the late 1960's, Decedent began performing his job using an x-ray machine, which substantially reduced but did not eliminate Decedent's radiation exposure.[3] In 1983, Decedent was diagnosed with polycythemia vera, a slow progressing disease which destroys bone marrow and culminates in acute leukemia. One known cause of polycythemia vera is exposure to radiation of the type Decedent used to obtain the radiographs prior to Employer's acquisition of an x-ray machine.

Decedent continued to perform his job as an x-ray technician until he was laid off on October 30, 1987, when Employer closed its facility. Cast–Rite Metal Company subsequently employed Decedent as a molder from November 12, 1988 through August 17, 1990. Thereafter, Decedent worked at Denny's Restaurant from April 24, 1991 through April 22, 1992 and Wal–Mart Stores, Inc. from April 22, 1992 until he entered the hospital for treatment on May 25, 1994. Following his hospitalization, Decedent was informed that his polycythemia vera condition had progressed to acute leukemia and he subsequently passed away on June 19, 1994.

Decedent collected unemployment compensation benefits during the periods that he was unemployed, however, he never filed a claim for workers' compensation benefits. On September 16, 1994, Claimant filed a claim petition and fatal claim petition as the dependent widow of Decedent. Claimant maintained that Decedent sustained and died from an occupational disease related to his work in Employer's metallurgical department. Claimant presented the testimony of herself, two of Decedent's former coworkers and two of

Decedent's treating physicians, William H. Lord, M.D. and Isadore Brodsky, M.D. Claimant and both of Decedent's coworkers testified regarding Decedent's job duties and the amount of radiation exposure he encountered while working for Employer. Dr. Lord testified that Decedent was totally disabled by polycythemia vera as of March 28, 1991. Dr. Brodsky testified that she informed Decedent for the first time on May 18, 1994 that his disease was caused by radiation exposure while working for Employer.

On May 28, 1997, the WCJ issued a decision and order holding that Claimant had satisfied her burden of proving that Decedent contracted polycythemia vera as a result of radiation exposure while working for Employer. The WCJ found that Decedent's last exposure to the occupational hazard occurred on October 30, 1987, his last day of employment. The WCJ credited the testimony of Claimant, Decedent's coworkers and Claimant's medical witnesses. The WCJ rejected the evidence presented by Employer to the extent that it conflicted with Claimant's evidence. The WCJ found that Decedent was diagnosed with polycythemia vera in 1983 and was medically disabled as of March 28, 1991. The WCJ concluded that Decedent's disability manifested itself within 300 weeks of his last exposure to the occupational hazard and that Decedent was not aware that his disease was work-related prior to Dr. Brodsky's assertion on May 18, 1994. The WCJ awarded Claimant total disability benefits beginning on October 30, 1987 and continuing during all periods when Decedent was unemployed. The WCJ also awarded varying amounts of partial disability benefits for those periods when Decedent worked for other em-

**2.** Due to the known risk of exposure to live radiation, the Atomic Energy Commission (AEC) required all employers using such techniques follow a testing protocol for all workers exposed to radiation in this manner. This protocol required blood tests every 90 days and measurement of exposure through the use of "film badges" that recorded radiation

exposure levels which the AEC monitored. (Birdsboro Corporation, Metallurgical Department Administrative Control Procedures, June 20, 1960, at 14a–15a, R.R. at 10).

**3.** The record does not reflect by what means Decedent performed his job during the period from 1961 through the point Employer purchased an x-ray machine in the late 1960s.

ployers yet still suffered a loss of earnings.

Employer appealed the WCJ's order to the Board, which reversed by order dated January 6, 1999. The Board held that Decedent was not disabled within 300 weeks of his last occupational exposure as required by § 301(c)(2) of the Act. 77 P.S. § 411(2). The Board determined that Decedent was not disabled because he sought other employment following his lay-off, and therefore, did not suffer a loss of earnings. Claimant now appeals the Board's order to this Court.[4]

On appeal, Claimant argues that the Board erred in concluding that Decedent was not disabled within 300 weeks based on its determination that he did not suffer a loss of earnings. We conclude that the Board properly reversed the WCJ's order, however, the Board's loss of earnings analysis is incorrect. The Board's analysis is contained in the following passage:

> In this case, we determined that Claimant was not disabled within the 300–week time frame. Disability equates to loss of earnings power under the Act. While Claimant was judged medically unable to work by Dr. Lord [on March 28, 1991], Claimant continued to work and therefore under the Act's definition of disability was no longer disabled. As noted above, Claimant continued to work until May 1994, when he entered the hospital shortly before his death. Therefore, Claimant was not disabled due to his occupational disease until after [sic] 300 weeks after his last expo-

sure to his occupational risk when he was laid off by [Employer] in 1987.

(Board Decision, January 6, 1999 at 6) (citations omitted).

The Board's reliance on Decedent's subsequent employment as a basis for reversing the WCJ's grant of benefits is perplexing. We first note that where a WCJ has determined that a work-related disability exists, the mere fact that a claimant obtains other employment does not automatically bar the claimant from collecting partial disability benefits. *See Brennan v. Workers' Compensation Appeal Board (Lane Construction Corp.)*, 683 A.2d 337, 339 (Pa.Cmwlth.1996) (stating that partial disability benefits should be awarded where a claimant continues to suffer from a work-related injury and is subsequently employed in a capacity which is not financially equal to his preinjury job). In fact, the Act intends that injured workers rehabilitate and return to the work force within any residual limitation. Where, as here, a claimant suffers a loss of earnings after obtaining subsequent employment, the Act permits the claimant to obtain partial disability benefits. *Id.* The instant case presents just such a fact pattern. Following his lay-off in 1987, Decedent obtained employment for intermittent periods but always suffered a loss of earnings. Had Decedent filed a workers' compensation claim within the 300–week limitation period, the schedule of benefits awarded by the WCJ would have been correct.[5]

As Employer correctly argues however, Claimant is barred from collecting work-

---

4. Our scope of review in a workers' compensation appeal is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workers' Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

5. The WCJ's order granted total disability benefits beginning October 30, 1987 at a rate of $277.15 per week based on an average weekly wage of $415.72 during those periods when Decedent was unemployed. The WCJ awarded partial disability benefits where Decedent's compensation rate was offset by the wages he earned during those weeks when he was employed. (WCJ Decision, May 28, 1997 at 15).

ers' compensation benefits not because of any issue relating to loss of earnings, but rather, because Decedent failed to file a claim for benefits within 300 weeks of his last exposure to an occupational hazard. In our recent decision in *City of McKeesport v. Workers' Compensation Appeal Board (Miletti)*, 715 A.2d 532 (Pa.Cmwlth. 1998), petition for allowance of appeal granted, —— Pa. ——, 732 A.2d 1211 (1998), we stated that an employer is properly notified of a work-related disability pursuant to § 301(c)(2) where a claimant either: (1) becomes disabled by an occupational disease and files a claim petition within the 300–week limitation period; or (2) dies as a result of an occupational disease within the 300–week limitation period.[6]

■■■■■ *City of McKeesport* involved a fact pattern similar to the instant case whereby the claimant filed a death benefits claim long after the 300–week limitation period had expired. In *City of McKeesport*, Cresente Miletti (Miletti) developed a lung disease as a result of his employment as a firefighter for the City of McKeesport. Miletti died nearly ten years after retiring without having filed a lifetime claim petition for workers' compensation benefits. The WCJ granted Mrs. Miletti's fatal claim petition upon concluding that her husband's work-related disability arose within the 300–week limitation period.

6. Section 301(c)(2) provides in pertinent part:

> The terms "injury," "personal injury," and "injury arising in the course of employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act.... Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable.

The WCJ relied on our decision in *Penn Steel Foundry and Machine Co. v. Workmen's Compensation Appeal Board (Wagner)*, 122 Pa.Cmwlth. 171, 551 A.2d 653 (1988), where we held that a claimant could file a claim petition outside the 300–week limitation period provided that the disability arose within 300 weeks of his last occupational exposure.[7] In overruling the *Penn Steel* majority, the Court in *City of McKeesport* sided with the *Penn Steel* dissent and interpreted § 301(c)(2) to be a statute of repose rather than a statute of limitation. 77 P.S. § 411(2). This distinction is important because these two types of time limitation statutes employ different means to restrict the period during which an aggrieved party must prosecute their claim. Under a statute of limitation the limited window of opportunity to prosecute a claim begins to run on the date that the cause of action first accrues. Black's Law Dictionary 1411 (6th ed.1990). In contrast, a statute of repose limits potential liability by restricting the period during which a cause of action may arise and prosecution of a claim commenced. *Id.* Thus, under a statute of repose a cause of action must arise and a claim must be filed within a predetermined window of opportunity. Under § 301(c)(2) of the Act, the limitation period of 300 weeks begins to run on the date of the employee's last exposure to the occupational hazard. 77 P.S. § 411(2).

77 P.S. § 411(2).

7. In *Penn Steel* Court stated:

> The legislature clearly recognized [that] ... although death may occur after 300 weeks of the last exposure, it is nevertheless compensable if the disability occurred within the 300–week period. It is the date of the compensable disability which triggers the limitation period even though death may occur after 300 weeks of the last exposure. The injury date begins to run after it is discoverable and it becomes apparent that a compensable injury or disease was sustained.

*Penn Steel*, 551 A.2d at 654. The *Penn Steel* holding was based on the premise that the 300–week limitation period is a statute of limitation rather than a statute of repose.

Specification of a triggering event other that the accrual of the cause of action which initiates the running of the limitation period is a clear indication that the General Assembly intended § 301(c)(2) to be a statute of repose. 77 P.S. § 411(2).

In the instant case, the 300–week limitation period began to run on October 30, 1987 and ended on or about August 30, 1993.[8] The WCJ credited Dr. Lord's testimony that Decedent was disabled as of March 28, 1991. However, while Decedent did become medically disabled by an occupational disease well within 300 weeks, his failure to prosecute his claim within this period extinguished all rights to workers' compensation benefits. Furthermore, since Decedent died beyond the limitation period and he had not filed a lifetime claim of any kind, Claimant is barred from pursuing a fatal claim petition. *See Duffy v. City of Scranton Fire Department,* 112 Pa.Cmwlth. 537, 535 A.2d 756, 758 (1988) (holding that fatal claim benefits may be awarded after the 300–week limitation period expires in cases where the decedent was previously awarded disability benefits for the same or related injury on a lifetime claim petition filed within the limitation period) *citing Toffalori v. Donatelli Granite Co.,* 157 Pa.Super. 311, 43 A.2d 584 (1945).

Accordingly, we affirm the Board's order and hold that the WCJ committed legal error by concluding that Claimant satisfied the requirements of § 301(c)(2) of the Act solely by establishing that Decedent suffered a work-related disability within the 300–week limitation period without having filed the requisite claim petition. 77 P.S. § 411(2). This is an admittedly harsh result considering that the record clearly shows that Decedent developed polycythemia vera through his exposure to radiation while working for Employer, however, the construction of § 301(c)(2) of the Act as a statute of repose requires that

we reverse the WCJ's award of workers' compensation benefits. 77 P.S. § 411(2).

## ORDER

AND NOW, this 8th day of July, 1999, the order of the Workers' Compensation Appeal Board dated January 6, 1999, reversing the order of the Worker's Compensation Judge is hereby affirmed.

SMITH, Judge, dissenting.

I dissent from the majority decision to affirm the order of the Workers' Compensation Appeal Board denying the disability and fatal claim petitions filed by Petitioner Nancy Wolf. The majority notes the harsh result reached in this case in view of the fact that the decedent developed an occupational disease, polycythemia vera culminating in acute leukemia which caused his death, due to the decedent's exposure to massive doses of radiation from cobalt, radium and x-ray equipment during his employment from 1956 through October 30, 1987 when he was laid off. I disagree with the majority's conclusion that the construction of Section 301(c)(2) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(2), as a statute of repose requires a reversal of the Workers' Compensation Judge (WCJ).

In the case sub judice, the decedent was diagnosed with polycythemia vera in 1983 by Dr. William Lord. He determined that the decedent was medically disabled as of March 28, 1991, within 300 weeks of his last exposure to radiation, and that medically he was incapable of working and should apply for social security disability. According to medical testimony credited by the WCJ, the decedent was entitled to disability benefits at the time of his layoff, and although the decedent continued to work after his layoff at various jobs earning less wages, he nonetheless continued to suffer from the effects of the occupational disease caused by his employment. Moreover, the record is undisputed that the

8. Three hundred weeks equates to five years, ten months.

employer was fully aware of the decedent's condition prior to his layoff. The decedent's exposure to radiation was monitored and tested by the employer beginning in 1959; the decedent's foreman testified that the employees used no protection and that dosimeters and film badges were eventually used to monitor exposure. The employer's medical insurance carrier paid medical bills incurred to treat the decedent's condition. Notwithstanding notice of the decedent's condition, the employer appealed the WCJ's decision, contending that the decedent did not die or become disabled within 300 weeks of his last exposure to radiation.

The WCJ found that the decedent was exposed to radiation through the last day of employment with the employer on October 30, 1987 and that he was declared medically disabled on March 28, 1991 because of the effects of the polcythemia vera condition caused by substantial exposure to radiation. The decedent's disability manifested itself within the 300-week period after his last exposure, and Petitioner proved that the decedent was unaware of the work-relatedness of his disease until May 18, 1994. After weighing extensive medical evidence, the WCJ determined that the decedent's work-related exposure to radiation led to his disease which ultimately caused his death and that Petitioner demonstrated that the acute leukemia was a natural evolution of the course of the decedent's polycythemia vera.

In *Sporio v. Workers' Compensation Appeal Board (Songer Constr.)*, 553 Pa. 44, 717 A.2d 525 (1998), the Supreme Court stated that under Section 301(c)(2) an employee's disability caused by an occupational disease must manifest itself within 300 weeks of the employee's last exposure to hazards of the disease to be compensable. To sustain a fatal claim petition, a claimant must show that the employee's death from an occupational disease occurred within 300 weeks after the employee's last exposure if the employee did not file a lifetime claim. The employer argued that because the employee filed no claim during his lifetime for the occupational disease that caused his death (malignant mesothelioma) and he died beyond the 300-week period, the claim petitions filed by his widow should be dismissed. The Supreme Court nonetheless allowed Petitioner's fatal claim petition, which was filed in February 1993 and alleged malignant mesothelioma as a cause of her husband's death and that his injury occurred in May 1983 (last exposure); the employee filed a claim petition in January 1993 for the same disease, but he died before any hearings were conducted. The court allowed the fatal claim given that the employee's disease resulted from his exposure to asbestos at work and that his former employer knew that he suffered injury due to that exposure, having defended the employee's June 1983 claim petition for mixed dust pneumoconiosis, which is not linked to the mesothelioma. The court held that even though the employee never filed a lifetime claim for the disease that caused his death, its decision did not impede the purposes of Section 301(c)(2).

In view of this most recent interpretation, I seriously question the majority's reliance upon *City of McKeesport v. Workers' Compensation Appeal Board (Miletti)*, 715 A.2d 532 (Pa.Cmwlth.1998), *appeal granted,* —— Pa. ——, 732 A.2d 1211 (1998), where this Court reversed the grant of a fatal claim petition solely because the decedent/employee failed to file a lifetime claim for benefits. Presumably, the Supreme Court will decide whether Section 301(c)(2) requires proof that an injury is "compensable" or is "compensated" during the 300-week period before a fatal claim petition may be granted. Nevertheless, Petitioner filed a claim petition on the decedent's behalf here, and the WCJ determined that he was entitled to total disability benefits from October 1987 to November 1988 and partial and total disability benefits for various other times thereafter due to his condition.

Most important, however, is the Supreme Court's recognition of the legislative intent behind Section 301(c)(2) to prevent stale claims and to prevent speculation over the cause of a disease many years after the exposure occurred, conditions that did not exist in *Sporio.* The court also noted that allowing benefits in that case furthered the remedial purposes of the Act. It is clear that here the purposes of Section 301(c)(2) have been met. Petitioner has not presented a stale claim nor is there a need to prevent speculation over whether the decedent's occupational disease is work-related many years after his last exposure. This Court too must consider the remedial purposes of the Act, which is to substitute a speedy and less costly alternative to common law tort claims to provide compensation to employees who suffer work-related injuries. *Sporio; see also Gardner v. Erie Insurance Co.,* 555 Pa. 59, 722 A.2d 1041 (1999) (the Act is to be liberally construed in favor of the injured employee and in favor of furthering humanitarian purposes of the Act). That construction will be fostered by the Court's reversal of the Board's order and reinstatement of the WCJ's well-reasoned, thoughtful and particularly thorough decision to grant benefits to Petitioner.