Mona SHARKEY, Petitioner,

v.

WORKERS' COMPENSATION
APPEAL BOARD (TEMPO,
INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 14, 1999.
Decided Oct. 20, 1999.

Patrick M. Donan, Philadelphia, for petitioner.

Patricia S. Duffy, Exton, for respondent.

Before DOYLE, President Judge, and PELLEGRINI, J. and McCLOSKEY, Senior Judge.

DOYLE, President Judge.

Mona Sharkey (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming, as modified, an order of a Workers' Compensation Judge (WCJ) which had granted the suspension petition of Tempo, Inc. (Employer).

Claimant was employed as a receptionist with Employer and sustained a work-related injury on June 20, 1986, when she stooped to lift a box of catalogues. Pursuant to a Notice of Compensation Payable dated July 29, 1986, Claimant began receiving weekly benefits in the amount of $146.04.

On August 27, 1990, Claimant filed a penalty petition, alleging that Employer failed to pay certain medical expenses related to the treatment of her injury. Employer filed a timely answer, and, on November 30, 1990, it filed a petition to review the notice of compensation payable, alleging that another employer, rather than it, was responsible for paying

Claimant's compensation and, accordingly, the notice of compensation payable issued on July 29, 1986, was in error. On March 26, 1993, a WCJ issued an opinion and order granting Claimant's penalty petition in part and denying Employer's petition to review the notice of compensation payable.

Employer appealed the denial of its review petition to the Board,[1] but, on January 7, 1994, while the appeal was pending, Employer also filed petitions to suspend/modify the Claimant's benefits. The petition to modify alleged that Claimant had not made a good faith effort to pursue employment that was within her physical limitations. Employer subsequently filed a termination petition on March 3, 1995, alleging that Claimant was no longer injured and could perform her time of injury position without restrictions. Claimant filed timely answers to the petitions, and hearings were scheduled before a WCJ.

In support of its petitions, Employer presented the deposition testimony of Doctor John Spieker who examined Claimant on January 14, 1993. Based upon his examination, he concluded that Claimant was capable of performing a position which involved activities no more strenuous than those of daily living. He concluded that a receptionist position fit within that classification.

In addition, Employer presented the testimony of Edwin Gray, a private investigator. On June 15, 1993, Mr. Gray and an associate, posing as a married couple, contacted Claimant about viewing her house which she had listed for sale. When Claimant answered the door, she had ankle weights on her legs. In addition, while touring the house, Mr. Gray observed that Claimant had no difficulty walking, climbing stairs or opening doors. To corroborate his testimony, Mr. Gray also presented, over Claimant's objection, a videotape of the tour.

In opposition to Employer's petitions, Claimant presented her own testimony and that of her doctor, Dr. James Marvel. Claimant testified that she did pursue all of the jobs which Employer had referred to her, but that her applications did not result in her being hired. Dr. Marvel testified that he had treated Claimant every three months since 1993, and he opined that Claimant suffers residual radiculopathy of the cervical spine and emotional problems as the result of chronic pain. As a result, Dr. Marvel opined that Claimant was disabled from her pre-injury job.

On December 28, 1995, the WCJ issued a decision granting Employer's suspension petition, denying Employer's termination petition and dismissing Employer's modification petition as moot. The WCJ concluded that Employer had met its burden of demonstrating that Claimant could return to her receptionist position as of September 27, 1993. In reaching this conclusion, the WCJ found the testimony of Dr. Spieker and Mr. Gray to be more credible than the testimony of Dr. Marvel and Claimant.

Subsequently, Claimant appealed to the Board which affirmed the WCJ's decision in all respects except that it modified the effective date of the suspension from September 27, 1993, to January 14, 1993, the date of Dr. Spieker's examination. The Board also ordered Employer to pay Claimant's litigation costs. This appeal by Claimant followed; Employer has not appealed.

On appeal,[2] Claimant argues that: (1) the WCJ erred by entertaining Employer's

1. The Board affirmed the WCJ's decision in an October 31, 1995 decision, and the issues in that appeal to the Board are not before us in this appeal.

2. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth. 1996).

suspension and termination petitions while an appeal in which Employer was denying any liability for Claimant's benefits was still pending; and (2) the WCJ erred by admitting the surveillance video over Claimant's objection.

As a threshold issue, the Claimant initially argues that Employer's suspension and termination petitions were premature because it had filed them while still arguing to the Board that another employer was responsible for paying Claimant's benefits. In support of this argument, Claimant relies on *Bechtel Power Corp. v. Workmen's Compensation Appeal Board (Miller)*, 70 Pa.Cmwlth. 6, 452 A.2d 286 (1982). In *Bechtel*, the claimant filed a claim petition and, following hearings, a referee[3] concluded that the claimant was totally disabled and awarded him benefits accordingly. The employer appealed that decision, and, while the appeal was pending before the Board, the employer also filed a termination petition, alleging that all disability had ceased. The Board dismissed the petition to terminate as prematurely filed, and the employer appealed to this Court.

On appeal, our review was limited to a sole, narrow issue:

> Should an employer, already appealing a decision of the referee to grant benefits, be permitted to file a petition to terminate before a decision is reached by the Board on the appeal?

*Bechtel*, 452 A.2d at 287. We concluded that an employer could *not* file such a petition, reasoning that, to permit such action, would contravene the established appeal process and result in unnecessary and counterproductive litigation of an identical issue.

■ In the present case, however, the issues involved are not identical, but dissimilar. Employer's appeal which was pending before the Board involved the issue of whether Employer was the party responsible for paying Claimant's benefits and, more specifically, any bills associated with medical treatment related to Claimant's injury. It was not the work-related injury itself which was challenged. Conversely, the suspension and termination petitions involved the degree, if any, of continuing disability and Claimant's good faith in pursuing job referrals. We do not view these petitions as averring that Claimant was **never** disabled. Accordingly, Claimant's reliance on *Bechtel* is misplaced, and the WCJ did not err by entertaining the suspension and termination petitions.

Next, Claimant argues that the WCJ erred by considering evidence offered by Employer, specifically Mr. Gray's deposition and accompanying videotape, over her objections. In support of this argument, Claimant states that she made timely objections to any extension of time for Employer to take Mr. Gray's deposition. Claimant further states that the WCJ sustained these objections and ordered the record closed as of April 26, 1995.[4] Reviewing the parties' correspondences and

---

3. Workers' Compensation Judges were known as referees prior to the passage of the Act of July 2, 1993, P.L. 190, commonly referred to as "Act 44," which amended Section 401 of the Act, 77 P.S. § 701.

4. Prior to taking the deposition of Mr. Gray and another witness, Claimant's counsel sent a letter to the WCJ objecting to the depositions on the ground that Employer was attempting to admit evidence under the guise of the termination petition which supported the modification petition. Claimant's counsel noted that the record on the modification petition had closed, and Claimant objected to any consolidation of the two petitions. In a

March 24, 1995 letter, the WCJ asked the parties to "[p]lease proceed with submission of all evidence and briefs by April 26, 1995. We will dispose of *future* petitions in accordance with the Administrative Rules of Practice." (WCJ's 3/24/95 letter; R.R. at 293.) (Emphasis added.) Employer's counsel subsequently sent a correspondence to the WCJ indicating that it desired to have the April 26, 1995, deadline extended and asked that the matter be confirmed at a pre-trial conference scheduled for April 25, 1995. (R.R. at 295a.) The record does not indicate that the WCJ denied this request at that conference.

the WCJ's March 24, 1995 letter, we do not believe that the WCJ intended to close, or did close, the record; rather, it appears that the letter from the WCJ was simply a method of docket control to keep the case moving, stating that "all evidence and briefs" should be filed by April 26, 1995, but taking into account the fact that there might be "future petitions." We would note that the record does not indicate that the WCJ denied Employer's request for an extension of the April 26, 1995 deadline, at the April 25, 1995 conference, nor does Claimant allege that such a ruling occurred.

 But, even if we were to consider that the March 24, 1995 letter evidenced the WCJ's intent to close the record on April 26, 1995, Employer's counsel subsequently requested that the WCJ keep the record open and accept Employer's additional evidence. It is well established that a WCJ has discretion to reopen the record, once closed, and such a decision will be not reversed by this Court absent an abuse of discretion. *Sherrill v. Workmen's Compensation Appeal Board (School District of Philadelphia)*, 154 Pa.Cmwlth. 492, 624 A.2d 240 (1993). We do not believe that the WCJ abused his discretion in this case, if, in fact, he did close the record, because Claimant had an opportunity to cross-examine these witnesses and nothing in the record suggests that Claimant would have been precluded from calling rebuttal witnesses or that Claimant even attempted to do so. Accordingly, even if the WCJ had closed the record, we conclude that he did not abuse his discretion by reopening it to receive the additional deposition testimony.

Finally, Claimant argues that, even if Mr. Gray's videotape was properly admitted by the WCJ, it should not have been considered because it was obtained unethically. As Employer points out in its brief, however, in *Isadore v. Workmen's Compensation Appeal Board (Owens–Illinois)*, 77 Pa.Cmwlth. 346, 465 A.2d 1096 (1983), we not only concluded that videotape sur-

veillance may be conducted without the permission of the claimant, we also rejected the argument that the tapes were inadmissible as a matter of law because the claimant's counsel was not notified prior to the taping. Accordingly, we once again reject this argument.

Order affirmed.

## ORDER

NOW, October 20, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.