Eddie DAVIS, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (H.M. STAUFFER
& SONS, INC.), Respondent.

H.M. Stauffer & Sons, Inc., Petitioner,

v.

Workers' Compensation Appeal Board
(Davis), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 25, 2000.

Decided Oct. 10, 2000.

Ronald L. Calhoon, Harrisburg, for petitioner, Eddie Davis.

Daniel M. Lieberman, Lancaster, for respondent, H.M. Stauffer & Sons, Inc.

BEFORE: PELLEGRINI, Judge, FLAHERTY, Judge, JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Claimant Eddie Davis and Employer H.M. Stauffer & Sons, Inc. each petition for review of the February 23, 2000 order of the Workers' Compensation Appeal Board (Board) that affirmed the order of the workers' compensation judge (WCJ) to the extent that it granted Claimant's claim petition, granted Employer's petitions for modification and denied Employer's termination petition. The Board, however, reversed the WCJ's order to the extent that it suspended, rather than modified, Claimant's benefits. We affirm in part and reverse in part.

On January 25, 1996, Claimant filed a claim petition seeking specific loss benefits for disfigurement for two surgical scars related to treatment for his work-related injury of March 12, 1991.[1] On May 17,

1. On March 19, 1996, Claimant filed a rein- statement petition, which was subsequently

1996, Employer filed a modification petition alleging that on May 7, 1996, Claimant had been reoffered a housekeeper/courier position.[2] On August 14, 1996, Employer filed a termination petition alleging that Claimant had fully recovered from his work injury as of July 26, 1996. On November 26, 1996, Employer filed a second modification petition alleging that Claimant had been offered a security guard position, which had been approved by his treating physician, and that Claimant did not accept that position.

Hearings on these petitions were held before the WCJ, at which both parties presented evidence, including medical evidence. On August 14, 1998, the WCJ issued a decision. The WCJ: (1) granted Claimant's claim petition and awarded him twenty weeks of specific loss benefits for disfigurement; (2) granted Employer's first modification petition and suspended Claimant's benefits effective May 7, 1996; (3) granted Employer's second modification petition and suspended his benefits effective November 26, 1996; and (4) denied Employer's termination petition.

On appeal, the Board affirmed, with the exception of the WCJ's two suspensions of Claimant's benefits based upon the modification petitions. Although the Board affirmed the WCJ's grant of the modification petitions, it reversed the two suspensions of Claimant's benefits and remanded for the limited purpose of properly adjusting Claimant's compensation. After reviewing the evidence, the Board determined that Employer failed to establish that Claimant would have no loss in earning power if he had accepted the offered positions.

■ On March 21, 2000, Claimant filed a petition for review of the Board's order. On March 31, 2000, Employer filed a cross

petition for review. On review, this Court is limited to a determination of whether the WCJ's necessary findings of fact are supported by substantial evidence, whether errors of law have been committed or whether constitutional rights have been violated. *Glick v. Workers' Compensation Appeal Board (Concord Beverage Co.)*, 750 A.2d 919 (Pa.Cmwlth.2000).

### Claimant's Appeal

Claimant's first argument is that Employer is barred from filing a subsequent modification petition while a previous modification petition, which contained identical issues, was on appeal to this Court. To support his position, Claimant cites *Sharkey v. Workers' Compensation Appeal Board (Tempo, Inc.)*, 739 A.2d 641 (Pa. Cmwlth.1999), where this Court, citing its earlier decision in *Bechtel Power Corp. v. Workmen's Compensation Appeal Board (Miller)*, 70 Pa.Cmwlth. 6, 452 A.2d 286 (1982), recognized that where an appeal is pending, a party may not file a petition which would essentially relitigate the identical issue that is being reviewed on appeal.

■ However, in *Sharkey*, the Court also recognized that where the issues involved are not identical, the rationale in *Bechtel Power Corp.* does not apply. Such is the case here. In *H.M Stauffer & Sons, Inc. v. Workmen's Compensation Appeal Board (Davis)*, 687 A.2d 869 (Pa.Cmwlth. 1996), this Court reviewed a situation where on June 3, 1992, Employer sent Claimant a letter advising him that a housekeeper/courier position within his physical restrictions was open and that Claimant was expected to show up for work on June 8, 1992. However, after his doctor had initially approved Claimant for light-duty work, he underwent additional

withdrawn.

2. Employer had previously filed a modification petition on the basis that Claimant had been offered an available housekeeper/courier position and that he had not accepted the job. However, this Court, in *H.M. Stauffer & Sons,*

*Inc. v. Workmen's Compensation Appeal Board (Davis)*, 687 A.2d 869 (Pa.Cmwlth.1996), determined that although that job was available, Claimant did not act in bad faith for refusing to report for work while he was awaiting the results of a recent medical test.

diagnostic testing. Because his doctor was out of town until June 9, 1992, Claimant requested that the job stay open until that date. Claimant then met with his doctor on June 9, 1992 to discuss the test results. After reviewing the test results, Claimant's doctor informed him that the light-duty position was not within his restrictions. Based on these facts, this Court determined that Claimant did not act in bad faith by refusing to report to work on June 9, 1992.

In 1996, Employer filed two new modification petitions based on medical examinations and job offers that occurred four years after the job offer at issue in *H.M Stauffer & Sons, Inc.* Both modification petitions were based on 1996 medical examinations by Employer's medical witness, Dr. J. Joseph Danyo, a board-certified orthopedic surgeon, and Claimant's medical witness and treating physician, Dr. Daniel Good, a board-certified neurosurgeon.

■ As indicated by the doctors' testimony, Claimant's medical condition had changed since 1992. The WCJ accepted as credible Dr. Danyo's testimony that Claimant could perform the housekeeper/courier job.[3] Finding of Fact No. 59; R.R. 19a. The WCJ also found that Dr. Good opined that Claimant was capable of performing the security guard position. Finding of Fact No 53; R.R. 19a.

Clearly, Employer's 1996 modification petitions cannot be considered to be identical to Employer's 1992 modification petition because the former are based on a different set of facts, i.e., different medical opinions, than the latter. As a result, the parties were not relitigating issues that had already been decided. Therefore, Claimant's reliance on *Sharkey* is misplaced. Hence, the WCJ did not err by ruling on Employer's modification petitions.

Claimant's second argument is that he did not have to follow through in good faith on a job referral to a light-duty position where Employer has not shown that the job is within Claimant's geographic reach. Particularly, Claimant contends that he did not have to follow through on the security guard position with Employer because he did not own a car and there was no public transportation from his residence to the job.

■ "With regard to the proximity of a job to a claimant's residence, we have held that a job is available to a claimant, so long as it is within the geographic area where others in the claimant's community would accept employment." *Litzinger v. Workers' Compensation Appeal Board (Builders Transp.)*, 731 A.2d 258, 261–262 (Pa. Cmwlth.1999). "Also, to determine if a job is within a claimant's reach, we may consider such factors as the availability of transportation, the duration of the commute and the length of the workday." *Id.* at 262.

■ In the case *sub judice*, the WCJ determined in Conclusion of Law No. 8 that Claimant failed to act in good faith by not returning to work based upon the offer of a night security guard position with Employer as of November 19, 1996. The WCJ noted that Claimant testified that prior to his injury, he would borrow the automobile of a friend to go to work and reimburse her for use of the car. The security guard position was at the same general location as Claimant's pre-injury job.

Specifically, the WCJ found that "Claimant acknowledged that he had driven Hazel Blalock's automobile to and from work for about two to three years." Finding of Fact No. 36; R.R. 17a. This finding is supported by Claimant's testimony that he

---

**3.** "The [WCJ], as the ultimate fact finder, has exclusive province over questions of credibility and evidentiary weight." *Green v. Workmen's Compensation Appeal Board (Association for Retarded Citizens)*, 670 A.2d 1216, 1221 (Pa.Cmwlth.1996). "In the exercise of broad discretion, the [WCJ] is free to accept or reject the testimony of any witness, including a medical expert, in whole or in part." *Id.*

had been driving his friend's car to work at his time-of-injury job and that he had paid her to use it. N.T. 2/05/97, pp. 60–62; R.R. 212–214. In fact, Claimant was videotaped driving that car by private investigators. Finding of Fact No. 34; R.R. 17a. Claimant admitted it was the same car. N.T. 2/05/97, p. 61; R.R. 213. Moreover, at no time did Claimant testify that he no longer had access to that car.

In view of the above findings, which are supported by substantial evidence, we conclude that the WCJ did not err in determining that Claimant failed to act in good faith by not taking the light-duty security guard position based on an alleged lack of transportation.

### Employer's Appeal

Employer's first argument is that the WCJ erred by granting Claimant's claim petition for disfigurement benefits where the scarring at issue was not unsightly in character. Specifically, Employer contends that because the WCJ found that Claimant's scars do not "produce an unsightly appearance," he is not entitled to an award of disfigurement benefits under Section 306(c)(22) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(22) (claimant entitled to specific loss benefits for "serious and permanent disfigurement of the head, neck or face, of such a character to produce an unsightly appearance, and such as is not usually incident to the employment....").

The WCJ made the following findings regarding Claimant's surgical scar:

37. Claimant testified that he underwent surgery in June of 1991 and the second surgery in January 1992. The first surgery was performed on the front of Claimant's neck and the second surgery was performed on the back of the Claimant's neck. Dr. Garrido performed the first surgery while Dr. Good performed the second surgery.

38. The scar from the first surgery is located at the base of the neck where the neck meets the shoulder in the front of the Claimant's neck. It is approximately 1½" in length.

39. The second surgical scar begins slightly above the hair line and proceeds down the back of the Claimant's neck in the center. The scar is approximately 3" in length and appears to be slightly discolored.

WCJ's Decision, p. 6; R.R. 17a.

In Conclusion of Law No. 2 the WCJ stated:

Claimant has sustained his burden of proof in regard to the Claim Petition for disfigurement. Both Dr. Good and the Claimant testified that the scars were the result of surgeries that were performed as a result of the work injury. Claimant is entitled therefore to compensation for total disability for a period of twenty (20) weeks based upon the permanent disfigurement as a result of the two surgeries performed on Claimant's neck. *These scars however do not appear to be of a character to produce an unsightly appearance therefore an award of twenty (20) weeks is appropriate.*

WCJ's Decision, p. 9; R.R. 20a (emphasis added).

■ Employer, citing *Workmen's Compensation Appeal Board v. Fruehauf Corp.*, 23 Pa.Cmwlth. 466, 353 A.2d 63 (1976), asserts that because the WCJ expressly concluded that Claimant's scars "do not appear to be of a character to produce an unsightly appearance," the WCJ erred in awarding Claimant disfigurement benefits. We agree.

■ In a claim petition proceeding, the claimant bears the burden of establishing the right to compensation and all necessary elements to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). In *Fruehauf Corp.*, the Court stated: "It has been consistently held that to support an award for disfigurement

there must be affirmative findings that the disfigurement be (1) serious and permanent, *(2) of such character as to produce an unsightly appearance,* and (3) such as is not usually incident to employment." 353 A.2d at 64 (emphasis added). In the case *sub judice,* the WCJ explicitly determined in Conclusion of Law No. 2 that Claimant's scars were not of such character to produce an unsightly appearance. Consequently, in accordance with *Fruehauf Corp.,* we are constrained to conclude that the WCJ erred in awarding Claimant disfigurement benefits where Claimant failed to establish all elements necessary for such an award.

Claimant, nevertheless, contends that although the WCJ may have inadvertently stated that the scars do not produce an unsightly appearance, the Board viewed the scars and found that the WCJ's award of twenty weeks of benefits was within the range most WCJs would have awarded for similar scarring. Citing *Hastings Indus. v. Workmen's Compensation Appeal Board (Hyatt),* 531 Pa. 186, 611 A.2d 1187 (1992), Claimant asserts that the Board has the authority to view scars in disfigurement cases and modify the WCJs' awards. Therefore, Claimant contends that because the Board determined that the WCJ's award was appropriate, it should stand.

■ We disagree. In its decision, the Board stated: *"However, the Judge also finds that the scars do not produce an unsightly appearance,* and that, therefore, an award of twenty weeks is appropriate." Board's Decision, p. 5; R.R. 30a (emphasis added). The Board did not contradict the WCJ's conclusion of law. To ignore this language in the WCJ's decision would be tantamount to rewriting Section 306(c)(22) of the Act by deleting the requirement that Claimant's disfigurement be of such a character as to produce an unsightly appearance. As the Supreme Court in *Hastings Indus.* recognized: "[I]t is the physical appearance of the claimant himself and the unsightliness of the disfigurement which constitutes the evidence considered by the [WCJ]." 531 Pa. at 192, 611 A.2d at 1190.

As a result, we must agree with Employer that the WCJ erred in determining that Claimant had met his burden of establishing all elements necessary for an award of disfigurement benefits under Section 306(c)(22) of the Act, 77 P.S. § 513(22). *Fruehauf Corp.* Accordingly, the WCJ's award of specific loss benefits for disfigurement is hereby reversed.

■ Employer's second argument is that the Board erred in reversing the WCJ's suspensions of Claimant's benefits.[4] Employer contends that the evidence accepted by the WCJ established that Claimant was offered work within his medical restrictions at wages equal to or greater than Claimant's pre-injury average weekly wage. Specifically, Employer asserts that Claimant cannot argue successfully that his overtime in the pre-injury job resulted in a higher average weekly wage than the light-duty jobs where he would have earned more per hour had he accepted the light-duty jobs.

We disagree. In *Harper & Collins v. Workmen's Compensation Appeal Board (Brown),* 543 Pa. 484, 672 A.2d 1319 (1996) the Supreme Court recognized that an employee's average weekly wage is calculated pursuant to Section 309 of the Act, 77 P.S. § 582, which requires the inclusion of overtime earnings.

In the present case, in Conclusions of Law Nos. 5 and 7, the WCJ found that both the housekeeper/courier position and the security guard position would have paid Claimant wages equal to or greater than his pre-injury average weekly wage.

---

4. Although this issue was not specifically included in Employer's "Counter Statement of the Questions Involved," it was raised by Employer in its cross petition for review and discussed by both parties in their respective briefs to this Court. As a result, the Court will address this issue.

*See* WCJ's Decision, p. 10; R.R. 21a. The Board, however, ruled that these determinations were not supported by substantial evidence.

As the Board noted, Nancy J. Frush, Employer's Vice President of Administration, testified that although both the housekeeper/courier and security guard positions paid more per hour than Claimant's pre-injury job, overtime was not guaranteed with the security guard position and there was not much potential for overtime with the housekeeper courier position. Before the WCJ, Frush testified on cross-examination as follows:

Q [Claimant's Counsel]. You stated that the security position would pay $8.20 an hour. And that would be closer, weekly, to what Mr. Davis was making pre-injury—

A [Frush]. With overtime.

Q. —with overtime? Although overtime is not guaranteed?

A. No. It never was.

Q. Okay. And so working the 40-hour shift at $8.20, he would still have some type of earning loss?

A. Yes.

Q. And that would also go back to the courier position? That was also a lesser-paying position—that was a loss as well?

A. Well, it was at his hourly rate at the time. However, there would not have been as much overtime potential.

N.T. 2/05/97, pp. 20–21; R.R. 172–173a.

As indicated by Frush's testimony, the WCJ's determinations, that the light-duty

positions Employer offered would have paid Claimant wages equal to or greater than his pre-injury average weekly wage, are unsupported by substantial evidence. Due to less potential for overtime, Claimant would still have suffered a definite wage loss had he accepted either the housekeeper/courier or the security guard positions regardless of whether the hourly rate of those positions was the same as his pre-injury job.

■ Where an employee continues to suffer residual impairment from his work injury and is earning less than his pre-injury average weekly wage, he is entitled to partial disability benefits and the amount of those benefits must be calculated in accordance with the Act. *Harper & Collins.* Consequently, the Board did not err in reversing the WCJ's suspension of Claimant's benefits and remanding for the limited purpose of determining the amount of partial disability benefits he is entitled to receive.[5]

In view of the foregoing, the decision and order of the Board are affirmed with the exception of the WCJ's award of disfigurement benefits. As discussed above, the WCJ erred in granting Claimant's claim petition for disfigurement benefits where Claimant failed to establish that his surgical scars were of a character to produce an unsightly appearance.

### *O R D E R*

AND NOW, this 10th day of October, 2000, for the reasons set forth in the foregoing opinion, the February 23, 2000 order

5. Employer cites *Brennan v. Workmen's Compensation Appeal Board (Lane Constr. Corp.),* 683 A.2d 337 (Pa.Cmwlth.1996), where the Court ruled that the employer was entitled to a suspension of benefits where the claimant failed to return to work at a light-duty job and where there was substantial evidence to indicate that the light-duty job would pay the same rate of pay with the same number of hours as the pre-injury job. The Court rejected the claimant's contention that he could work overtime at his pre-injury job, but not the light-duty job, because the WCJ had determined, based upon the witnesses' testimony, that the claimant would suffer no loss in earnings.

The present case, however, is factually distinguishable. Here, Frush, Employer's Vice President, testified that even if Claimant had accepted either of the light-duty positions, he would still have an earnings loss. As such, unlike the situation in *Brennan,* the WCJ's conclusion that Claimant would not have suffered a loss in earnings, is unsupported by substantial evidence.

of the Workers' Compensation Appeal Board is hereby reversed to the extent that it affirmed the Workers' Compensation Judge's award of specific loss benefits for disfigurement. In all other respects, the order of the Board is affirmed.