**Rhonda WALKER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HEALTH CONSULTANTS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2012.

Decided May 3, 2012.

Jon M. Lewis, Greensburg, for petitioner.

Diane A. Blackburn, Pittsburgh, for respondent Health Consultants.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge LEAVITT.

Rhonda Walker (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying her request for a disfigurement award for her nose, reinstatement of total disability benefits and amendment of the notice of compensation payable (NCP) to include additional work injuries. In doing so, the Board affirmed the Workers' Compensation Judge's (WCJ) decision with regard to the reinstatement and additional injuries. However, the Board reversed the WCJ's award of 45 weeks of disfigurement benefits, holding that the appearance of Claimant's nose does not amount to a disfigurement that is compensable under the Workers' Compensation Act (Act).[1] We affirm.

Claimant was employed by Health Consultants (Employer) as a meter reader. On May 8, 2007, Claimant fractured her nose when she fell down a flight of stairs, for which she had surgery on June 26, 2007. Employer issued an NCP describing the injury as a nasal fracture and began total disability benefits as of June 26, 2007. Employer suspended Claimant's benefits effective August 6, 2007, when she was released to return to work without restrictions. Claimant reported for work on August 6th but immediately tendered a resignation letter, stating that August 10th would be her last day. Claimant under-

went a second nasal surgery on October 23, 2007.

Claimant filed a reinstatement petition alleging that she was totally disabled by her work injury as of August 10, 2007.[2] At the hearing before the WCJ, Claimant orally amended her reinstatement petition to request an award of benefits for permanent disfigurement of her nose. In addition, during the course of the litigation it became apparent that Claimant was also alleging that she sustained injuries to her neck, back and left shoulder when she fell down the stairs.

Claimant testified in support of her petitions, both by deposition and live before the WCJ. Claimant described her May 2007 fall, which caused bruises on various parts of her body. Claimant's major injury was to her nose, although she continued working until she underwent her first nasal surgery in June 2007. After her surgery, Claimant continued to have pain in her nose and face. Claimant's plastic surgeon released her to return to work in August 2007, but she was in too much pain to do the job for more than one week. Further, Employer would not make any accommodations for her. On cross-examination, Claimant admitted that she did not ask for accommodations and did not tell Employer she was quitting because of her work injury. Claimant's resignation letter said that she was moving to New York.

Claimant underwent a second nasal surgery in October 2007 that resolved her nose and face pain. Claimant testified that she considers herself to be "deformed" because her nose has scars on it and the tip of her nose is crooked. Reproduced Record at 35–36 (R.R. ——). The WCJ instructed Claimant to submit photo-

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

2. Claimant also filed a petition to review medical treatment and/or billing alleging that Employer failed to pay some medical bills for her work injury. The WCJ found that Employer was responsible for one bill but not the others. This determination is not part of the present appeal.

graphs of herself because a change to Claimant's nose was not "obvious" to the WCJ. R.R. 53. Claimant complied, submitting into evidence photographs of herself taken both before and after her accident. Certified Record, Exhibit C–6.[3]

Claimant testified that she also injured her left shoulder, neck and back when she fell. Claimant stated that the pain in her low back is constant, has worsened over time and prevents her from doing her meter reader job. Claimant saw a chiropractor for her neck and back in December 2007 and saw a medical doctor for those problems in March 2008. Claimant testified that it took her so long to see a doctor for her neck and back because she was initially focused only on her nose and face pain.

Claimant presented the medical deposition of Robert M. Fetchero, D.O., a board certified family practitioner who first saw Claimant on March 17, 2008. Based on Claimant's history and a physical examination, Dr. Fetchero diagnosed Claimant with the following disabling work injuries: neck pain; thoracic pain; low back pain; bilateral radicular leg pain, left greater than right; left shoulder pain; left proximal arm pain; headaches; anxiety and insomnia.

Employer presented the medical deposition of Jack D. Smith, M.D., a board certified orthopedic surgeon who performed an independent medical examination (IME) of Claimant on August 11, 2008. Claimant told Dr. Smith that she bruised her left arm and injured her face, neck and lower back when she fell. However, the medical records of panel doctor Pamela Gianni, M.D., the first physician to treat Claimant, did not refer to any back or neck injuries. Dr. Gianni diagnosed Claimant with a broken nose and with contusions and abrasions to the shoulder, nose, head, right wrist, left knee, chest, upper back and left arm. Records from Claimant's plastic surgeon, Francis Johns, D.M.D., M.D., revealed that Claimant had recovered from her nasal fracture.

At the IME, Claimant complained of pain in her neck, both shoulders, lower back, both hips and both legs. However, in his physical examination of Claimant, Dr. Smith found no objective evidence to substantiate her subjective complaints. Based upon his review of Claimant's medical records and his physical examination of her, Dr. Smith opined that Claimant did not injure her neck or back in the work accident. Even if she had sustained such injuries, she had recovered. Dr. Smith saw a slightly discolored, thickened patch of skin on Claimant's left upper arm where a contusion had been, but it was not disabling. Dr. Smith testified that Claimant could perform her meter reader job without restrictions.

The WCJ denied Claimant's request to add injuries to the NCP and to reinstate total disability benefits. The WCJ rejected as not credible Claimant's testimony that she sustained additional work injuries and that she was forced to resign her job because of pain caused by her fall. The WCJ also rejected Dr. Fetchero's opinion as not credible, instead crediting Dr. Smith's opinion. The WCJ found that Claimant's only work injury was her nose fracture, which did not disable her as of August 10, 2007, or any time thereafter.

With respect to the disfigurement claim, the WCJ found that Claimant's nose injury had caused a permanent and unsightly disfigurement. The WCJ based this finding on her review of photographs of Claimant before and after her injury. The WCJ explained as follows:

> [Claimant's] nose, in the photographs taken on March 26, 2004, and December

**3.** The photographs are not included in the reproduced record.

6, 2005, is straight. In the photographs taken after the May 8, 2007, nasal fracture and surgeries, [Claimant's] nose is crooked leaning to the left side of her face. The crookedness begins at the base of the bridge of the nose and continues to the end of her nose. The little scars, which [Claimant] testified were present, are not visible in the photographs.

WCJ Decision, August 12, 2009, at 5–6; Finding of Fact 16. The WCJ awarded Claimant 45 weeks of compensation for the disfigurement.

 Both Claimant and Employer appealed. The Board reversed the WCJ's disfigurement award. The Board viewed Claimant in person and found, as fact, that her nose has "a slight crookedness" to the left side. Board Adjudication at 7. The Board determined that "the crookedness is not noticeably disfiguring" and, therefore, not compensable. *Id.* The Board affirmed the WCJ's decision in all other respects. Claimant now petitions for this Court's review.[4]

Claimant raises two issues for our consideration. First, Claimant argues that the Board erred in reversing the WCJ's disfigurement award. Claimant contends that because her nose is now slightly crooked, which the Board acknowledges, she is entitled to an award. Second, Claimant asserts that the WCJ and the Board erred in failing to add a back injury to the NCP.

 We begin with the disfigurement issue. As with any work injury claim, the claimant bears the burden of proving each and every element necessary for an award of disfigurement benefits under Section 306(c)(22) of the Act, 77 P.S. § 513(22).[5] *City of Philadelphia, Risk Management Division v. Workmen's Compensation Appeal Board (Harvey)*, 690 A.2d 1293, 1296 (Pa.Cmwlth.1997). Pennsylvania courts have consistently held that in order to establish entitlement to a disfigurement award, "there must be affirmative findings that the disfigurement be (1) serious and permanent, (2) *of such character as to produce an unsightly appearance,* and (3) such as is not usually incident to employment." *Davis v. Workers' Compensation Appeal Board (H.M. Stauffer & Sons, Inc.)*, 760 A.2d 899, 903–04 (Pa.Cmwlth. 2000) (emphasis in original) (quoting *Workmen's Compensation Appeal Board v. Fruehauf Corporation*, 23 Pa.Cmwlth. 466, 353 A.2d 63, 64 (1976)).

 Not every change to a claimant's head, neck or face will be compensable.[6]

---

4. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

5. Section 306(c)(22) of the Act provides for a disfigurement award as follows:

For serious and permanent disfigurement of the head, neck or face, of such a character as to produce an unsightly appearance, and such as is not usually incident to the employment, sixty-six and two-thirds per

centum of wages not to exceed two hundred seventy-five weeks.

77 P.S. § 513(22).

6. As treatise authority explains:

The "unsightly appearance" requirement has produced the commonsense rule that not every mark or residual of an injury to the head, neck or face will constitute disfigurement. *The claimant may well suffer some alteration of the head, neck or face yet not be entitled to any award at all.*

\* \* \*

The claimant must prove not merely that he or she has a scar or other blemish, but that the complained-of mark is disfiguring.

A discernable scar, blemish or alteration of the head, neck or face must also rise to the level of creating an unsightly appearance or it will not be considered a disfigurement for purposes of the Act. *Fruehauf Corporation*, 353 A.2d at 64. *See also Davis*, 760 A.2d at 904 (holding that because the WCJ found that two surgical scars on the claimant's neck were not unsightly, the scars, while visible, were not compensable).

■■■■ Whether a residual injury is serious or unsightly is a question of fact to be determined upon a personal view of the claimant. *Sun Shipbuilding and Dry Dock Company v. Workmen's Compensation Appeal Board*, 41 Pa.Cmwlth. 302, 398 A.2d 1111, 1115 (1979), *aff'd, Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). The WCJ has the first opportunity to do this personal view of the injury to determine its seriousness and unsightliness. *McCole v. Workers' Compensation Appeal Board (Barry Bashore, Inc.)*, 745 A.2d 72, 76–77 (Pa.Cmwlth.2000). On appeal, the Board conducts its own personal view of the claimant because that is the "only meaningful way for the [Board] to determine whether the WCJ's opinion is supported

by substantial competent evidence." *Id.* at 77 (internal quotation omitted); *See also Koppers Company v. Workmen's Compensation Appeal Board (Martin)*, 80 Pa. Cmwlth. 288, 471 A.2d 176, 177 n.2 (1984). The Pennsylvania Supreme Court explained why it is critical for the Board to view the claimant in person, stating:

> [I]t is the physical appearance of the claimant himself and the unsightliness of the disfigurement which constitutes the evidence considered by the [WCJ]. It is impossible to preserve this evidence with total accuracy in the record. Even if photographs, proverbially worth thousands of words, are included in the record, their accuracy depends on lighting, camera quality, skill of the photographer, and other factors which affect the truth they convey.

*Hastings Industries v. Workmen's Compensation Appeal Board (Hyatt)*, 531 Pa. 186, 191, 611 A.2d 1187, 1190 (1992).[7] If the Board views the claimant and determines that the WCJ's finding of fact on unsightliness is not supported by the evidence, the Board will reverse the WCJ's disfigurement award or denial, whichever the case may be., *Industrial Casting Co. v. Workmen's Compensation Appeal Board (Boltz)*, 35 Pa.Cmwlth. 172, 384 A.2d 1384, 1385 (1978).[8]

DAVID B. TORREY AND ANDREW E. GREENBERG, WORKERS' COMPENSATION LAW AND PRACTICE § 7:42 (3d ed.2008) (emphasis added).

7. In *Hastings*, the Supreme Court was asked to decide whether the Board could change the amount of compensation awarded by the WCJ for a disfigurement. The difficulty arose because Section 306(c)(22) of the Act, 77 P.S. § 513(22), permits an award of up to 275 weeks for a disfigurement, but gives no specific guidance on what different types of disfigurement should be worth. The Supreme Court described the issue of the amount of a disfigurement award as "at least a mixed question of fact and law" subject to the Board's review. *Hastings*, 531 Pa. at 191, 611 A.2d at 1190. The Court then held that if the [Board] concludes, upon a viewing of a claimant's disfigurement, that the [WCJ]

capriciously disregarded competent evidence by entering an award significantly outside the range most [WCJs] would select, the [Board] may modify the award as justice may require.

*Id.* at 192, 611 A.2d at 1190. Through this holding, the Court hoped to achieve "a reasonable degree of uniformity in disfigurement awards." *Id.* We note that the issue in the instant case is not merely the amount of the award, it is whether the requisite elements for disfigurement have been met.

8. In *Industrial Casting*, the WCJ denied disfigurement benefits because he found that the inch-and-a-half-long surgical scar on the claimant's neck was not unsightly. The Board viewed the scar and determined that it was, in fact, unsightly, making it compensa-

In support of her argument that she is entitled to compensation for her altered nose, Claimant relies on *Consolidated Coal Company v. Workmen's Compensation Appeal Board (Bardos)*, 142 Pa.Cmwlth. 621, 598 A.2d 333 (1991), and *School District of Philadelphia v. Workmen's Compensation Appeal Board (Gardiner)*, 98 Pa.Cmwlth. 580, 511 A.2d 947 (1986). In *Bardos*, the claimant was awarded 50 weeks of compensation because his facial injury left him with one eyebrow lower than the other and his right eyelid appearing to be constantly tight. In *Gardiner*, the claimant was awarded 90 weeks of compensation for four lost front teeth and a scar above her lip. Claimant argues that her injury is similar to those in *Bardos* and *Gardiner*, making it worth at least 45 weeks of compensation. Claimant also suggests that this Court should defer to the WCJ's evaluation of Claimant's appearance. We reject Claimant's arguments.

■ It is true that the claimants in *Bardos* and *Gardiner* each received disfigurement awards.[9] However, in neither case was there an issue of unsightliness. Further, these cases do not stand for the proposition that every facial alteration merits an award of compensation.[10] To the contrary, the law is well-settled that a visible alteration of the head, neck or face is not necessarily compensable. *Davis*, 760 A.2d at 904. Rather, the alteration in a particular claimant, as assessed through a personal view by the WCJ and the Board on a case-by-case basis, must create an unsightly appearance. If it does not, there can be no disfigurement award.

Here, the WCJ did not see an unsightly appearance in Claimant and requested photographs. Based on the photographs, the WCJ saw a change in Claimant's nose and found it to be unsightly. In *Hastings*, our Supreme Court specifically cautioned against gauging unsightliness on the basis of photographs because photographs can be manipulated by lighting and focus, to make the facial alteration appear worse than it actually is. The Board fulfilled its duty of *personally* viewing Claimant and determined that the WCJ's decision was unsupported because although there was a visible alteration to Claimant's nose, it amounted to a "slight crookedness" that is "not noticeably disfiguring." Board Adjudication at 7. Stated otherwise, it does not create an unsightly appearance. As such, the Board did not err in concluding that Claimant did not meet her burden of showing all necessary elements for a disfigurement award.[11]

■ Turning to Claimant's second issue, she argues that she "should have an award for some back complaints" because all of the doctors involved in this case acknowledge that she sustained a back injury in the work accident. Claimant's Brief at 10. Claimant points to panel physician Dr.

ble. This Court affirmed the Board's award based on the Board's personal observation.

9. Only the workers' compensation authorities who actually viewed the claimants in *Bardos* and *Gardiner* know what their appearance was.

10. In *Bardos,* the employer did not dispute that the injury was disfiguring. It argued only that 50 weeks was an excessive award. Likewise, the employer in *Gardiner* did not dispute that losing four front teeth is disfiguring. It argued that the award should be based on the claimant's appearance with her fixed bridge prosthesis replacing the four lost teeth, not her appearance without it. This Court rejected the employers' arguments in both cases.

11. Unlike the WCJ and the Board, this Court does not have "jurisdiction to view scars [or other injuries] in workers' compensation disfigurement cases." *DPW/Norristown State Hospital v. Workers' Compensation Appeal Board (Reichert)*, 858 A.2d 693, 696 (Pa. Cmwlth.2004).

Gianni's records, acknowledged by Dr. Fetchero and IME physician Dr. Smith, that Claimant injured her upper back when she fell.

Contrary to Claimant's assertion, her records do not prove that she sustained a compensable back injury. Claimant's back complaints predominantly involve her lower back. Dr. Gianni merely listed upper back as one of many places where Claimant sustained abrasions and contusions when she fell. Dr. Gianni did not diagnose a back injury, did not mention the lower back and did not restrict Claimant from working. The WCJ considered the evidence and rejected Claimant's contention that she sustained a compensable back injury for several reasons, including the fact that Claimant did not seek any treatment for back pain until seven months after her accident. Claimant is essentially attacking the WCJ's credibility determination, which she is not permitted to do because the WCJ is the sole arbiter of credibility. *Barrett v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 987 A.2d 1280, 1288 (Pa.Cmwlth.2010).

Accordingly, the order of the Board is affirmed.

President Judge PELLEGRINI dissents.

### ORDER

AND NOW, this 3rd day of May, 2012, the order of the Workers' Compensation Appeal Board dated February 17, 2011, in the above-captioned matter is hereby AFFIRMED.