IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Olga Medina,                                    :
                        Petitioner               :
                                                :
            v.                                   :    No. 799 C.D. 2017
                                                :    Submitted: October 20, 2017
Workers' Compensation Appeal                     :
Board (F&P Holding Co., Inc.),                    :
                        Respondent               :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED:  February 26, 2018

            Olga Medina (Claimant) petitions for review of an adjudication of the
Workers' Compensation Appeal Board (Board) that denied Claimant's claim
petition and granted F&P Holding Company, Inc.'s (Employer) termination
petition.[1]    In doing so, the Board affirmed the decision of the Workers'
Compensation Judge (WCJ).  Claimant contends the Board erred because the WCJ
improperly disallowed relevant testimony, made factual findings not supported by
substantial evidence and produced a non-reasoned decision.  Discerning no merit to
Claimant's assignments of error, we affirm.

            Claimant worked for Employer on an assembly line where she pulled
and weighed containers of mushrooms.  On October 27, 2011, Claimant sustained
an injury to her dominant right wrist. Claimant notified Employer and was referred

---

[1] The Board's order also remanded the matter to the WCJ for further evidence and findings of fact
concerning Employer's Utilization Review petition.  Board Order at 17; Reproduced Record at
314a (R.R. __).  Employer's Utilization Review Petition is not at issue in this appeal.

to a panel physician, who recommended a light-duty work assignment. Claimant continued to work for Employer in a light-duty capacity as a scaler,[2] and Employer issued a medical-only Notice of Compensation Payable accepting Claimant's right wrist injury.

On June 6, 2012, Claimant gave Employer a note from her doctor that she could no longer work in a light-duty capacity. Claimant subsequently filed a claim petition alleging an injury to her right wrist and other injuries to her "right upper extremity [] and right shoulder." R.R. 2a. The claim petition sought total disability benefits from July 6, 2012, and ongoing. Employer filed an answer acknowledging Claimant's right wrist injury but denying the alleged injuries to Claimant's right arm and shoulder. Employer also denied that Claimant was disabled as a result of the accepted right wrist injury, or any other alleged work-related injury. On October 8, 2012, a hearing was held before a WCJ.

Claimant testified that on October 27, 2011, she injured her right wrist while weighing mushrooms at work. She notified Employer and began therapy with Employer's panel physician, Jonathan Dreazen, M.D. He recommended a light-duty position and referred her to Leonard D'Addesi, M.D., with whom she treated in November and December 2011. Claimant testified that over time her symptoms worsened, with pain spreading to her right elbow and entire right arm. In April 2012, she sought medical treatment for these symptoms and began physical therapy with Norman Stempler, D.O. On July 6, 2012, she gave Employer a note from Dr. Stempler stating she could no longer work in any capacity. Since July 6, 2012,

---

[2] A scaler weighs mushrooms, but the job requires less lifting. Notes of Testimony (N.T), 10/8/2012, at 13; R.R. 34a.

Claimant has continued therapy with Dr. Stempler three times per week and is taking Tramadol for pain.

Claimant explained that in 2009, two years before her work injury, she had experienced pain in her right wrist and arm, but it was not treated. She continued to work. Except for the symptoms she experienced in 2009, she did not otherwise have problems with her right shoulder, arm, or hand. Claimant opined that she was not capable of going back either to her pre-injury or to a light-duty position with Employer.

On cross-examination, Claimant explained that Dr. Dreazen restricted her to the light-duty scaler position, with the direction that she not use her right hand at all. Claimant testified that even though she could perform the scaler position with her left arm, it was not suitable:

> [Counsel]: Are you telling us that you cannot go back to a job that only requires you to use your left arm?
>
> [Claimant]: I can't, because I cannot work with the left hand.
>
> [Counsel]: You can't work with the left hand?
>
> [Claimant]: No.
>
> [Counsel]: Well, correct me if I'm wrong, but you worked for about seven or eight months with your left hand; isn't that true?
>
> [Claimant]: Yes, but it was getting tired and it was starting to cause pain.
>
> [Counsel]: So your left hand started causing you pain?
>
> [Claimant]: Yes.
>
> [Counsel]: Did you tell Dr. Stempler that?
>
> [Claimant]: No.

3

[Counsel]: Have you told the company that?

[Claimant]: No.

N.T., 11/8/2012, at 26-27; R.R. 47a-48a.

Claimant offered the deposition testimony of Dr. Stempler, a board certified orthopedic surgeon, who testified as follows about his first visit with Claimant on April 13, 2012:

> [Dr. Stempler]: She told me she was 40 years old and she worked at a mushroom farm. She had to carry cases and boxes and tills of mushrooms. She would do a lot of pushing, pulling and lifting.
>
> She related on [10/27/11], she was trying to grab a large box of mushrooms and felt a sudden sharp pain in her wrist initially. She did report it, but no treatment was offered. She did have a past history of a similar incident resulting in wrist pain and she relayed that it never completely resolved. Her past medical history was not contributory.
>
> She also had pain up towards her right elbow and she complained of numbness and tingling of her ring and fifth finger, which is the ulnar side of the hand, which she relates that she didn't have a problem with for two years, the incident of two years prior. She denied taking medication and allergies.
>
> She didn't speak English, her poor English [sic] and we did have a translator available. She stated that she did have some diagnostic [test results], however, at that first visit they weren't available. She writes that she was working at that time doing a modified duty, which is moving light boxes of mushrooms while seated. She was using only her left hand. She compared [sic] to be tolerating it at that time. In regards to her right wrist and elbow, she had pain and difficulty with most activities, pushing, pulling, lifting, reaching and then we went on to examine her.

4

Stempler Deposition at 8-9; R.R. 62a-63a. Following Claimant's physical examination, Dr. Stempler diagnosed her with "a right ulnar neuropathy at the elbow, ligament injury to the right wrist." *Id.* at 10; R.R. 64a. Because she was tolerating her light-duty position at the time, Dr. Stempler allowed her to continue working.

When Dr. Stempler next saw Claimant on May 25, 2012, she complained of pain in her right elbow and wrist. Dr. Stempler wrote a note limiting Claimant to no more than 40 hours of work per week. At their next visit on July 6, 2012, Dr. Stempler advised Claimant to stop working because the light-duty position was "just exacerbating her symptoms." Stempler Deposition at 12; R.R. 66a.

Dr. Stempler next saw Claimant on August 17, 2012. Based on his review of Claimant's MRI results, he determined that the repetitive nature of Claimant's job was causing her shoulder pain:

> [Dr. Stempler]: I saw her on August 17[th] of that year with continued symptoms involving her right upper extremity from her shoulder on down. Difficulty with the same activities, holding, pushing, pulling, lifting, reaching; and at that time we had an MRI of the shoulder and I felt that, my review of the disk, she had a partial tear of the tendons of the rotator cuff. She had some evidence of thickening consistent with inflammation in a prior tear and there was also what looked to me like she had a labral defect in that shoulder as well.
>
> [Counsel]: What is that?
>
> [Dr. Stempler]: That's a cartilage, a little cushion cartilage, that sits between the ball and the socket of the joint; and there is one in the hip and one in the shoulder.
>
> [Counsel]: Do you have an opinion as to what that was caused by?
>
> [Dr. Stempler]: Repetitive activities with use of her extremity.

5

[Counsel]: Would that be at work?

[Dr. Stempler]: Yes, repetitive work activities.

Stempler Deposition at 13-14; R.R. 67a-68a.

Dr. Stempler ultimately diagnosed Claimant with "left heavy tendonitis peritendinitis of her [right] shoulder with internal derangement and partial tear," right carpal tunnel syndrome, and right ulnar nerve entrapment syndrome at the elbow with ulnar neuropathy. Stempler Deposition at 21; R.R. 75a. He opined Claimant could not return to work.

At a second hearing before the WCJ on December 6, 2012, Employer presented the testimony of Mary Gonzalez, Employer's Human Resources Manager. Gonzalez testified that she learned of Claimant's work injury in October 2011, and assigned her to the light-duty scaler position to accommodate her work restrictions. She described the light-duty position as similar to Claimant's regular job, but it was done at a slower pace and could be done with one hand. Gonzalez testified that she interacted regularly with Claimant during her time on light duty, and Claimant never complained of any difficulties. Gonzalez further testified that Employer requires modified-duty employees to complete bi-weekly forms noting any problems with their restricted positions. Claimant's forms did not indicate any problems with the scaler position.

Employer offered the deposition testimony of S. Ross Noble, M.D., who performed an Independent Medical Examination (IME) of Claimant on February 12, 2013. Dr. Noble testified that Claimant presented with the following complaints:

> [Dr. Noble]: Her current complaints included stabbing pains in the right elbow, the right shoulder, pain in the whole right arm, a burning sensation into her head and neck, pain in the fingertips

6

of the third, fourth, and fifth fingers of the right hand, pain around her right ear when she chews, difficulty breathing, and pain in her right armpit.

Noble Deposition at 7; R.R. 192a.

Dr. Noble testified that during the physical exam, Claimant used her right arm in ways that were inconsistent with her complaints:

> [Dr. Noble]: The only thing I noted when I initially had her stand up was although, she's had no lower extremity problem, she's telling me the use of the right arm is painful, that she can't use her right arm for anything and her husband had to do everything. She had to grip the arm of the exam chair with her right hand when going from sit to stand and she told me that she has pain in her entire right arm and into her neck and head when she puts her hand on the armrest of the exam chair and pushes to get up to a standing position. I think the significance of that is taking the subjective complaints with a little bit of a grain of salt because there's also no reason for her to be pushing up with an arm that she says she can't use. I mean, she showed good function of the arm in doing that quite frankly.

Noble Deposition at 15-16; R.R. 200a-01a.

Dr. Noble's review of Claimant's medical history and diagnostic test results confirmed the opinions he formed during Claimant's examination. Regarding an MRI of Claimant's right wrist taken on November 3, 2011, Dr. Noble testified that it showed small abnormalities attributable to aging, but nothing that would limit the function of her right wrist. A second MRI of Claimant's right wrist, taken on July 13, 2013, supported Dr. Noble's opinion that there were no signs of trauma and all other findings were age-related but of no clinical significance. Finally, Dr. Noble reviewed an MRI of Claimant's right shoulder taken on July 13, 2013; it also revealed no evidence of traumatic injury.

7

Dr. Noble concluded that Claimant's subjective complaints of pain were not borne out by any objective evidence. Further, she was not entirely forthcoming with her medical history. Acknowledging that Claimant suffered a wrist sprain on October 27, 2011, Dr. Noble opined that it did not cause underlying damage and that she had fully recovered from the sprain.

On March 2, 2013, Employer filed a petition to terminate Claimant's benefits for her right wrist injury. The termination petition alleged Claimant was fully recovered and able to return to work without restriction.

A final hearing on Employer's termination petition was held on August 1, 2013. Claimant testified that she had still not recovered from her October 27, 2011, work injury and could not return to work for Employer in any capacity.

On January 3, 2014, the WCJ denied Claimant's claim petition and granted Employer's termination petition. The WCJ determined that Claimant's testimony was not credible based on her demeanor during the hearing. The WCJ credited the testimony of Mary Gonzalez, Employer's Human Resources Manager, based on her demeanor. The WCJ found the testimony of Dr. Noble more credible and persuasive than that of Dr. Stempler. Based on these findings of fact, the WCJ held that Claimant did not sustain her burden of proof on the claim petition. Employer, on the other hand, successfully established that Claimant had recovered from her October 27, 2011, right wrist injury. The WCJ terminated benefits for Claimant's work-related wrist sprain.

Claimant appealed to the Board, asserting that the WCJ's decision was not reasoned and not supported by substantial evidence. She further asserted that the WCJ erred by not allowing her to testify about her current treatment for her right wrist. The Board affirmed the WCJ, and Claimant petitioned for this Court's review.

8

On appeal,[3] Claimant raises the issues she presented to the Board, which we have reordered for purposes of our review. First, Claimant asserts that the WCJ did not issue a reasoned decision in accordance with *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043 (Pa. 2003). Second, Claimant argues that the WCJ's findings of fact are not supported by substantial evidence. Third, Claimant argues the WCJ erred by denying her the opportunity to testify at the August 1, 2013, hearing on Employer's termination petition about the medical treatment she was receiving from a new doctor. Employer responds that the WCJ's decision is amply supported by the record. Claimant's real complaint is with the WCJ's credibility determinations, which are beyond the scope of appellate review. We consider Claimant's issues *seriatim*.

Claimant first challenges the WCJ's finding that her testimony was "not credible based on [the WCJ's] personal observation during her direct and cross-examination." WCJ Decision at 4, Finding of Fact No. 10; R.R. 290a. Claimant argues that the WCJ's finding, based solely on Claimant's demeanor, is not "reasoned" under the standards enunciated by our Supreme Court in *Daniels*.[4]

---

[3] "This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed." *Walker v. Workers' Compensation Appeal Board (Health Consultants)*, 42 A.3d 1231, 1235 n.4 (Pa. Cmwlth. 2012).

[4] The "reasoned decision" requirement, explained by the Supreme Court in *Daniels*, is a statutory mandate found in Section 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L., 736, *as amended*, 77 P.S. §834, which provides:

> Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law

At issue in *Daniels* was whether a WCJ's decision to credit an expert opinion without explanation satisfied the reasoned decision requirement in Section 422(a) of the Act. The Supreme Court explained that

> absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstances of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.

*Daniels*, 828 A.2d at 1053. In short, a WCJ must explain "the why" behind credibility determinations based on a deposition. However, where the factfinder has seen the witness testify, an abbreviated discussion of the witness's credibility "could be sufficient to render the decision adequately 'reasoned.'" *Id.*

Here, Claimant testified in the presence of the WCJ. The WCJ rejected her testimony as not credible based on the WCJ's personal observation of her demeanor. This was appropriate. No further explanation is required in order for this Court to conduct its appellate review.

In her next issue, Claimant argues that the WCJ's findings of fact are not supported by substantial evidence. Substantial evidence is such relevant

---

based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

evidence as a reasonable mind might accept to support a finding of fact. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In evaluating a substantial evidence challenge, the appellate court does not reweigh the evidence or review credibility determinations. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Further, the court "must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced [from the evidence]." *Wagner v. Workers' Compensation Appeal Board (Anthony Wagner Auto Repairs & Sales, Inc.)*, 45 A.3d 461, 465 n.5 (Pa. Cmwlth. 2012). Last, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005) (quoting *Delaware County v. Workers' Compensation Appeal Board (Baxter Coles)*, 808 A.2d 965, 969 (Pa. Cmwlth. 2002)).

Claimant asserts that Dr. Noble's testimony was insufficient to establish that she recovered from her work-related right wrist sprain because it was contradicted by the medical opinions of her treating physicians. Specifically, Claimant argues that Dr. Noble's opinion of full recovery conflicted with the opinions of Dr. Dreazen, Employer's physician, whom she saw immediately after the October 27, 2011, work injury, and Dr. D'Adessi, Employer's panel doctor whom she saw in November and December of 2011. At that time, Dr. Dreazen suggested diagnostic testing, and Dr. D'Adessi recommended surgery.

11

Claimant is challenging the WCJ's decision to credit Dr. Noble's testimony as opposed to her experts' testimony. It is well settled that the "WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). Moreover, "the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Ausburn v. Workers' Compensation Appeal Board (Merrell & Garaguso)*, 698 A.2d 1356, 1358 (Pa. Cmwlth. 1997). The WCJ credited Dr. Noble's opinion that Claimant had fully recovered as of the date of his IME, February 12, 2013. The opinions of Dr. Dreazen and Dr. D'Adessi were dated to 2011, just after her injury occurred. Neither doctor discussed Claimant's medical status in 2013. Dr. Noble reviewed all of Claimant's medical records before rendering his conclusion that Claimant had fully recovered from her right wrist sprain. This testimony was credited by the WCJ, and we will not disturb that credibility determination on appeal.

In her final argument, Claimant contends that the WCJ erred by refusing to allow her to testify at the termination hearing about her current treatment with a new treating physician, Dr. Randy Hauck, for her right wrist. Employer objected to Claimant's proffered testimony because she had not produced any medical records from Dr. Hauck. Claimant's Counsel conceded there were no records and that he only recently learned of Claimant's treatment with Dr. Hauck. The WCJ sustained Employer's objection, but allowed Claimant to testify about her current symptoms and how they affected her ability to work.

The "admission of evidence is committed to the sound discretion of the WCJ." *Atkins v. Workers' Compensation Appeal Board (Stapley in Germantown)*,

12

735 A.2d 196, 199 (Pa. Cmwlth. 1999). The Board, when presented with Claimant's challenge, explained as follows:

> At the last hearing when Claimant testified she treated with a Dr. Randy Hauck for her right wrist, [Employer] objected because it had no records from that doctor. The WCJ sustained the objection because Claimant's counsel did not even have any records concerning this evaluation and Claimant's testimony at that time was supposed to go toward the Termination Petition filed approximately five months earlier. We see no abuse of discretion in this respect. At the previous hearing on April 2, 2013, Claimant was given until July 10, 2013 to present medical testimony with regard to the Termination Petition. However, there is no indication that she attempted to present testimony from this doctor or any other. Further, she repeatedly testified that she continues to have problems with her right upper extremity and presented Dr. Stempler's testimony with regard to his opinion on the nature of her injury and need for continuing treatment and surgery. Given everything, we see no basis upon which to disturb the Decision.

Board Opinion at 14-15; R.R. 311a-12a (internal citations omitted). We agree with the Board. Claimant had adequate time to proffer medical evidence in response to Employer's termination petition, and she chose to do so through Dr. Stempler's deposition. Her testimony on August 1, 2013, where she attempted to relay the medical opinion of a new treating physician with no supporting medical records was properly rejected.

For all these reasons, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Olga Medina,                          :
                  Petitioner          :
                                      :
        v.                            :    No. 799 C.D. 2017
                                      :
Workers' Compensation Appeal          :
Board (F&P Holding Co., Inc.),        :
                  Respondent          :

# **O R D E R**

AND NOW, this 26th day of February, 2018, the order of the Workers' Compensation Appeal Board dated June 7, 2017 in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge